HARRY W. PRUE *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

FEBRUARY 13, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is a petition for workmen's compensation in which a decree was entered in the superior court awarding petitioner compensation for total incapacity due to an accident arising out of and in the course of his employment on July 14, 1948 by reason of which petitioner suffered "an exacerbation of a pulmonary infection of tuberculosis." From such decree respondent has appealed to this court.

The respondent's reasons of appeal are that the decree is against the evidence, against the law, and against the law and the evidence and the weight thereof. Notwithstanding the last-stated reason with reference to the weight of the evidence, respondent conceded in its argument before us that this court does not pass on the weight of the evidence in determining the merits of an appeal from a decree of the superior court in a workmen's compensation case. *Burke* v. *Fram Corp.*, 76 R. I. 359. Its appeal, therefore, rests solely upon the ground that the decree is contrary to law in that there is no legal evidence to support the finding of the trial justice that the accident caused the petitioner's incapacity by exacerbating an existing condition of pulmonary tuberculosis.

The facts in evidence on which the trial justice based his decision are substantially these. On July 14, 1948 while petitioner was operating respondent's public motor bus along Columbus avenue in the city of Pawtucket the gasoline tank exploded and set the bus afire. The force of the explosion was such that it also set fire to a nearby house and blew out the fronts of two stores. The respondent stopped the bus and saw to it that the passengers left before he did. This took about five minutes and during that time heavy black smoke and fumes from the burning gasoline, oil, leather, mohair, and paint filled the bus and were inhaled by petitioner.

When he got out of the bus he was nervous and emotionally upset. He became violently sick to his stomach and immediately vomited. He stayed on duty at the burned

bus until about 2:30 a.m. before going home, but was still so nervous that he could not make out his report of the accident and respondent's inspector made it out for him. The next two days were petitioner's regular days off. He stayed home until Saturday when he went back to work although he did not "feel very good." He worked until the following Wednesday but his condition had become so bad that he felt he could continue no longer. During this period he lost forty pounds.

On July 23, 1948 petitioner went to the office of Dr. Earl J. Mara in Pawtucket who examined him and found that he had an active case of tuberculosis. X rays, which were taken a few days later upon the advice of Dr. Mara, confirmed his diagnosis and petitioner went to the state sanatorium at Wallum Lake on August 10, 1948 where he remained thirty-three days. His condition improved as a result of his stay there, but Dr. Mara still found that he was totally incapacitated for work and prescribed bed rest which he continued at home for nine months after the accident.

The petitioner entered respondent's employ in March 1945 after a physical examination by its medical examiner. Prior thereto he had been discharged from the army after a medical examination which did not indicate that he was tubercular. He testified positively that he did not know he had tuberculosis until he was examined by Dr. Mara after the accident. His employment record with respondent was introduced in evidence and shows a series of absences from work in 1946, 1947, and 1948. He explained those absences as due largely to difficulty in adjusting himself to his employment as a bus operator, since for many years prior to going into military service he had been a musician in so-called "name" bands. There was no evidence presented by respondent that such absences were due to illness from tuberculosis.

On November 11, 1948 Dr. Peter F. Harrington, a specialist in diseases of the chest, examined petitioner on behalf of respondent. He testified that petitioner then had a "very

advanced" type of tuberculosis and expressed the opinion that it must have been present for a considerable time prior to the date of the accident, July 14, 1948. On that point there is no disagreement between him and Dr. Mara except that the latter expressed the opinion that the accident could have caused the infection to flare up and become disabling. Doctor Harrington testified that the effects of the accident had nothing to do with petitioner's incapacity.

In this state of the medical testimony it was within the exclusive province of the trial justice to determine which opinion he would accept. *Reynolds* v. *Freemasons Hall Co.,* 60 R. I. 343; *Enos* v. *Industrial Trust Co.,* 62 R. I. 263. It is evident from his rescript that he chose not to accept Dr. Harrington's opinion, apparently because his testimony did not assist the court in determining what effect the inhalation of fumes from the fire and the accident itself had upon petitioner's latent tuberculosis. It is equally evident that he construed Dr. Mara's testimony as an expression of his considered opinion that the accident and the effects therefrom were the cause of the flaring up of petitioner's pre-existing infection into active, disabling tuberculosis. The respondent, however, argues that Dr. Mara's testimony when read as a whole cannot be construed as the expression of such a positive opinion. On the contrary it argues that such testimony when fairly interpreted amounts to no more than the doctor's opinion of a mere possibility.

The respondent's contention rests upon a construction of Dr. Mara's testimony and therefore requires a discussion thereof. He testified that the disabling effect of the tuberculosis which first became manifest after the accident could be attributed thereto. He reiterated on the witness stand in direct examination the following statement which he had previously made before the trial: "It is my opinion that such an emotional event, accompanied by pulmonary irritation from smoke and flames, could precipitate the onset of this man's pulmonary disease or, at least, fan the flame of a pre-existing unknown infection into fulminating

activity." And he added: "I still feel that." He was then asked: "That is your considered opinion about this case, Doctor?" and he replied: "Yes, sir."

Almost immediately thereafter he was cross-examined by respondent's attorney on that particular matter. In our opinion such examination has tended to obscure the precise nature and extent of Dr. Mara's testimony in direct examination or at least to create some ambiguity in it as a whole. For this reason his real opinion on the matter can be discerned only by resorting to a process of interpretation or construction of his answers in the light of the questions which elicited them. We, therefore, give those questions and answers here in their proper sequence and without any interpolations on our part.

"Q. Now, you said: 'It is my opinion that such an emotional event, accompanied by pulmonary irritation from smoke and flames, could precipitate the onset of this man's pulmonary disease.' Now, you say, 'Could precipitate.' Do you mean by that, it could have caused it, Doctor? A. It could. I didn't say that I truly feel that it did but it 'could' do it. Q. Is it reasonably probable that it did? A. I think the second circumstance I put in here is the probable assumption. Q. Well, let us stick to the first one, first and get that out of the way. You say it could? A. Yes, I still say it could. Q. It is possible? A. Very definitely. Q. And in your opinion, it did? A. It very definitely could. Q. No, but in your opinion, did it cause the tuberculosis in this man? A. No, bacillus causes tuberculosis. It is caused by bacteria infection as in most infectious diseases. Q. This isn't clear to me and that is why I am trying to bring it out. You don't take the position that this man's lungs were free of tuberculosis and then because of this incident which was caused by pulmonary irritation, by smoke and flames, that he had tuberculosis in his chest from then on? A. That could happen. There isn't any way a man can tell unless you have examined him, previously. But tuberculosis can be as rapid as that. Usually, it is not."

The cross-examination continued in this manner: "Q. Well, from your examination of this man's chest and from the examination of the X-Ray, and so forth, is it your opinion that it did cause the tuberculosis? A. I think it is a contributory—I think it was bacterial, so that it couldn't cause any infection. I mean, I don't think any fumes or flames can cause the tuberculosis. It is a bacterial thing. Q. Do I understand from that, that you say this pulmonary irritation—assuming that there was pulmonary irritation—from inhaling smoke and fumes, could not cause tuberculosis? A. I say that it could allow the bacteria present in this room or any room, to invade previously healthy tissue. Q. In other words, his lungs could have been in a perfectly healthy condition before he inhaled this smoke and fumes and following that, he had tuberculosis? A. I wouldn't take that position. I am saying that could happen in an individual. Q. I think you said that before. Now, Doctor, will you tell us, in your opinion, did that happen in this case? That is all we are interested in. Not 'Could it' but 'Did it?' A. Would it bring about the first onset, at the very first stages of tuberculosis? Q. That is right. A. I don't believe it did."

At this point the cross-examination took the following turn: "Q. Now, you say it could, at least, fan the flames of a pre-existing, known infection into a full and activated and active infection? A. Yes. Q. Do you mean by that, it could have caused a lighting up or exacerbation? A. No, I don't know of anything else the man was exposed to, at that time, that is all. Q. You hadn't seen the man for some time and that was for an abscess, was it? A. No. Q. So, you don't know what condition his lungs were in? A. I have no previous examination of his lungs. Q. So that you don't really know, from your own knowledge, whether this incident fanned the flames of a pre-existing, unknown infection, do you? A. I stated here that was an opinion. My knowledge started on my first contact with the case on July 23rd."

We think a reading of those questions shows that re-

spondent's attorney and the witness were not in agreement as to the purport of some of the questions and the corresponding answers. At times the witness appeared to understand that the attorney was inquiring as to whether the effects of the accident could have caused petitioner's tuberculosis, and he answered accordingly in the negative. And it would seem from succeeding questions that the cross-examiner believed he had received an answer as to whether the flaring up of the tuberculosis could have been caused by the accident. Toward the end of the interrogation he tried to clarify this confusion but he was not entirely successful.

We are of the opinion that Dr. Mara's testimony as a whole was left in such an ambiguous state as to be reasonably open to two different interpretations. One of these is that argued for by respondent and the other is the meaning which the trial justice adopted. Whether his interpretation is less reasonable than that of respondent is of no consequence. So long as it is not unreasonable it must stand as a finding of fact regardless of whether it may submit to a different and more reasonable interpretation. *Esposito* v. *Walsh-Kaiser Co.*, 74 R. I. 31.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*William R. Goldberg*, for petitioner.

*Frank J. McGee*, for respondent.